# In the United States Court of Federal Claims

No. 15-445L
(Filed: January 7, 2016)

* * * * * * * * * * * * * * * * * * *

BOTTOM LINE, INC.,

      *Plaintiff,*

v.

Physical taking; regulatory taking;
motion to dismiss; Rule 12(b)(6).

THE UNITED STATES,

      *Defendant.*

* * * * * * * * * * * * * * * * * * *

    *Brandon K. Moffitt*, Little Rock, AK, for plaintiff.

    *Frank J. Singer,* United States Department of Justice , Environmental & Natural Resources Division, Washington, DC, with whom was *John C. Cruden*, Assistant Attorney General, for defendant.

<u>ORDER</u>

    Pending in this claim brought pursuant to the Takings Clause of the Fifth Amendment is defendant's motion for partial dismissal.  The complaint seeks compensation for the taking of a flowage easement on plaintiff's land along the Arkansas River.  It advances two counts.  One asserts a physical taking by the United States Army Corps of Engineers ("Corps"), the other a "regulatory taking."  The motion to dismiss, made pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims, asserts that the facts laid out in the complaint are incompatible with a regulatory theory of taking.  The matter is fully briefed and we deem oral argument to be unnecessary.  We agree with defendant.

    According to the complaint, plaintiff owns land on the Arkansas River along a stretch of river within Segment 2 of the Murray Lock and Dam, which

is in turn within the McClellan-Kerr Arkansas River Navigation System, operated by the Corps for the purpose of keeping the Arkansas River navigable between Tulsa, Oklahoma and the Mississippi River. As part of navigation improvements initiated in 1971, predecessors-in-title to plaintiff were compensated for a flowage easement, encumbering the land up to elevation 252.

Bottom Line, Inc., the plaintiff here, purchased the property in 2006 for development purposes on the assumption that the existing flowage easement was compatible with commercial development. According to plaintiff, on at least two occasions, the Corps operated the navigation system in such a way that flooding exceeded the easement, going up to elevation 254 or higher. Plaintiff contends that the Corps has made an operational determination that, in order to maintain navigability, it will be necessary to flood up to at least the 254 foot elevation. It also contends that the Corps has purchased an increased easement from other landowners along the river but has refused to compensate plaintiff because of a lack of funding. Plaintiff contends that the Corps' actions are intentional and will have the effect of permanently subjecting its land to an increased easement, thereby lowering its value by approximately $4,000,000.

Plaintiff asserts alternative theories of taking liability. The first, as mentioned above, is that the Corps' conduct has resulted in a physical taking of a new easement. The target of the motion to dismiss is the second cause of action, which asserts a regulatory taking theory.

Defendant points out that the language of the second cause of action, paragraphs 32-41, repeats the assertions of physical impact set out in the first cause of action. Paragraph 34 recites that the subject property "has been damaged by the physical invasion of flood waters." Paragraph 35 refers to the "physical invasion of flood waters above the existing flowage easements." Paragraph 39 asserts that the government "has appropriated an easement . . . and caused a physical invasion of a portion of the property." None of the other paragraphs of the complaint refer any specific regulatory conduct on the part of the Corps. The more general assertions merely refer to the Corps' "regulation" of the river system to maintain navigability. All of the taking impacts, however, involve the direct, physical occupation of land.

Defendant asks the court to clean up the complaint by dismissing a cause of action which defendant contends cannot succeed on the stated facts and which is, in effect, duplicative of a more pedigreed taking claim. It suggests that this will avoid wasted motion in the pretrial stages of the litigation and will in nowise prejudice plaintiff's ability to pursue its real claim. Plaintiff responds that it

is entitled to pursue alternative theories and declines the offer of streamlining the litigation.

We agree with defendant. While plaintiff is entitled to pursue alternative, potentially duplicative theories of recovery, when either theory is challenged by a Rule 12(b)(6) motion, that theory has to stand up to scrutiny. Plaintiff's regulatory taking theory does not.

The complaint as currently framed refers only to physical impacts from the Corps' conduct. As defendant correctly argues, regulatory takings assert an indirect impact on land value from regulation. They are distinct from physical takings, as explained by the Supreme Court in *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001), where the Court segregated physical takings from "government actions [which] do not encroach upon or occupy the property yet still affect and limit its use to such an extent that a taking occurs." The theory of regulatory takings has its genesis in *Pennsylvania Coal v. Mahon*, 260 U.S. 393, 415 (1922), where Justice Holmes declared that the exercise of a police power can have such a dramatic indirect consequence on the value of land that it is equivalent to a physical occupation; equivalent in effect, in other words, but different in execution.

Defendant is correct that it is unnecessary to plaintiff's ability to prosecute its case to maintain a regulatory takings theory but that keeping it in the case is both unwarranted by the facts asserted in the complaint and is a distraction. Accordingly, we grant the motion for partial dismissal. The complaint will proceed on a physical takings theory.

s/ Eric G. Bruggink  
ERIC G. BRUGGINK  
Judge